UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LUIS VALENZUELA,

                              Plaintiff,                     16-cv-9680 (PKC)

      -against-

                                                        OPINION
                                                        AND ORDER
MERCER STREET HOSPITALITY LLC,
142 MERCER STREET LLC d/b/a LURE FISH
BAR, KATY DEAN, and DEVON WEISS,

                              Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          After a six-day trial at which eleven witnesses testified, the jury unanimously returned a verdict in favor of all defendants on plaintiff Luis Valenzuela's federal claims of disability discrimination, failure to provide a reasonable accommodation of a disability, and retaliation for engaging in a protected activity, all under the Americans with Disabilities Act ("ADA"). The ten-member jury also found in favor of defendants on plaintiff's claims of disability discrimination and retaliation in violation of the New York City Human Rights Law ("NYCHRL"). Named as defendants were two entities, Mercer Street Hospitality LLC and 142 Mercer Street LLC, which operated an establishment known as the Lure Fish Bar. Also named on the NYCHRL claims were two employee-managers, Katy Dean and Devon Weiss.

          Plaintiff Valenzuela has timely moved for a new trial. See Rule 59, Fed. R. Civ. P. He claims neither evidentiary error nor error in the Court's instructions to the jury. Rather, he asserts that with respect to the federal and city disability discrimination claims and the retaliation claim under the NYCHRL, the jury reached a "seriously erroneous result" that was "against the

weight of the evidence." (Pl. Br. at 1-3).[1]  For reasons that will be explained, the motion will be denied.

Rule 59 Standard

In determining whether a new trial is appropriate under Rule 59(a), Fed. R. Civ. P., the Court applies a less stringent standard than on a motion for judgment as a matter of law.  See Manley v. AmBase Corp., 337 F.3d 237, 244–45 (2d Cir. 2003); Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987).  "[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." Manley, 337 F.3d at 245 (second alteration in original) (internal quotations and citations omitted).

The Evidence Before the Jury

Plaintiff began working as a waiter in a high-end restaurant known as the Lure Fish Bar in October 2015.  (Tr. 167).  He was terminated in April 2016.  (Tr. 249, 478).  At trial, he claimed that he suffered from anxiety that met the definition of a disability under the ADA and NYCHRL and that he engaged in a protected activity as defined by the NYCHRL.  He argued that his actual or perceived disability and his engagement in protected activity were "motivating factor[s]" for his termination in April 2016.

Among the hotly disputed issues at trial were, first, whether plaintiff actually suffered or was perceived as suffering from anxiety such that his condition met the definition of a disability under the ADA and the NYCHRL and, second, whether plaintiff was terminated at least in part because of a disability, the perception of a disability, or a protected activity.  These

---

[1] The motion does not seek relief with respect to the federal accommodation claim or the federal retaliation claim.

were issues on which the plaintiff bore the burden of proof. The defendants vehemently denied that any actual or perceived disability or protected activity was a motivating factor for plaintiff's termination. Defendants also urged that even if an actual or perceived disability or protected activity were a motivating factor, defendants would have taken the same actions with respect to the plaintiff even in the absence of discriminatory intent—on this issue, the jury was instructed that the defendants bore the burden of proof.

Valenzuela's first witness was Missy Neill, who worked with him at Lure Fish Bar and at two other restaurants prior to Lure. (Tr. 35-37). Neill was the sommelier at Lure Fish Bar and recommended Valenzuela for employment. (Tr. 38, 42). She described her relationship with him as "friendly." (Tr. 36). During the course of their relationship, Valenzuela told Neill that he suffered from anxiety attacks and she told him that she also suffered from anxiety. (Tr. 42-44).

The jury heard testimony regarding two incidents that occurred at Lure Fish Bar prior to Valenzuela's termination. First, on March 20, 2016, Valenzuela was scheduled to work the brunch shift at Lure, but overslept. (Tr. 316-318). He called in about a half-hour after his shift had already begun and spoke to his manager, Devon Weiss. (Id.). Weiss told him to come in and work the dinner shift. (Tr. 319). He arrived to work the dinner shift, but around 7:15 p.m., he told Missy Neill, his friend and manager, and defendant Katy Dean, another manager, that he needed to leave because of his anxiety. (Tr. 46-48, 327, 334). According to Valenzuela, the two told him he could not leave. (Tr. 338-39). Katy Dean suggested that he go to the stairwell and she provided him with water and wet paper towels. (Id.). Valenzuela testified that he was in the stairwell "on and off for 45 minutes" and that his managers "were checking on me frequently." (Tr. 340). Valenzuela left the restaurant around 8:30 p.m. and he did not recall

whether he took a Xanax for his anxiety at any time prior to leaving the restaurant. (Tr. 328, 334, 341). Prior to his departure, Katy Dean told him to confer with the server next to him to "[m]ak[e] sure that everything was communicated prior to transitioning out." (Tr. 342). Instead, he testified that he told the other server that he was going to the emergency room "and I just handed a stack of papers, my receipts, and I just walked out." (Tr. 343).

Neill said that she remembered Valenzuela telling her on March 20, 2016, that he wanted to step off the "floor" because he had anxiety. (Tr. 45-46, 50). She testified that she "believed that he was suffering because he hadn't slept at all that night and had been out partying. . . . That is what I believed was actually happening." (Tr. 47). She held this belief because Valenzuela had told her that he was "out all night." (Tr. 91-92). She acknowledged that he could have had anxiety because he had been out partying and because he was concerned that he might lose his job after oversleeping for his shift. (Tr. 47, 50). She also testified, "I never told him he couldn't leave. I suggested that that was a bad idea" and "I suggested that he stay for the 30 minutes that remained of his shift, if he could do that." (Tr. 53). She recalls Valenzuela leaving without telling anybody and testified that "[h]e just walked out of the restaurant and didn't tell anyone, not the closing server that was working with him that he was leaving." (Tr. 47, 58). Katy Dean wrote up the incident. (DX 10).

A second incident occurred on April 4, 2016, when Valenzuela was scheduled to work the dinner shift. (Tr. 196). During the shift, Katy Dean observed him texting on his cell phone, which is a prohibited activity. (Tr. 198, 287, 409, 416, 420, 485, 573). Dean told Valenzuela to hand her his cell phone so that she could put it in the manager's office for the remainder of his shift and he complied. (Tr. 198, 576-77). Valenzuela testified that shortly after he started serving tables that night, he began experiencing anxiety. (Tr. 201-02). He approached

Katy Dean and asked her if he could leave the floor in order to go take a Xanax. (Tr. 202-05). According to Valenzuela, Dean denied him permission to do so. (Id.). Valenzuela testified, he left the floor anyway, retrieved his Xanax from his locker, and lay down for 20 minutes before returning to the floor to continue working his shift. (Tr. 205-06). Contrastingly, Dean testified that Valenzuela approached her during the shift and told her "I want to go," to which she responded "[d]o you need to go meaning taking a break, or do you need to go meaning go, go home for the shift, leave for the shift?" (Tr. 624). She testified that in response to her questions, Valenzuela "didn't respond" and "walked downstairs," leaving her to "figure out what he was doing or not doing." (Id.). She testified that he did not return for about an hour to an hour and a half. (Tr. 626-30).

On April 6, 2016 Valenzuela worked the lunch shift at Lure. (Tr. 223). Devon Weiss and the general manager, Seth Alexander, were also working that day. (Id.). Per Alexander's instructions, Weiss told Valenzuela to meet with himself and Alexander at the conclusion of the lunch shift to discuss the events of April 4, 2016. (Tr. 223, 764). Valenzuela left the building after his lunch shift without speaking to or otherwise communicating with Weiss or Alexander. (Tr. 670-71, 765). Alexander testified that Weiss called Valenzuela after his departure but was unable to reach him. (Tr. 766).

Valenzuela testified that after his lunch shift on April 6, he tried to go to the Human Resources Department, but the office was closed. (Tr. 223). At around 6:30 p.m. that day, he received an electronic notification indicating that he had been deleted from all of his shifts at Lure, implying that he had been suspended or terminated. (Tr. 225-28). On April 7, around 3 or 3:30 p.m., Valenzuela met with Richard Malijan of the Human Resources

Department and handed him a complaint for a failure to accommodate his disability. (Tr. 229, 436-37).

As support for his claim that his anxiety qualified as a disability under the ADA and the NYCHRL, plaintiff called Rodolfo Guardon, a nurse practitioner who saw plaintiff in his practice since 2013. (Tr. 120-121). Guardon became aware in March 2015 that Valenzuela suffered from anxiety, and Guardon's treatment was to provide Valenzuela with anti-anxiety medication. (Tr. 123-24). In December 2016, almost eight months after Valenzuela left the Lure Fish Bar, Guardon wrote a "To whom it may concern" note per Valenzuela's request. (Tr. 125, 137). Guardon's note reported that Valenzuela "suffers from generalized anxiety disorder which he controls with Xanax as needed." (Tr. 125; PX N). On cross-examination, Guardon testified that he should not have written "generalized anxiety" but should have written "just anxiety" because "[g]eneralized anxiety gets very clinical. Anxiety is more nonspecific." (Tr. 137, 138). Also, after being confronted with his treatment notes, Guardon testified that during one of Valenzuela's visits, "I documented that [Valenzuela] informed me that he had a history of Xanax abuse." (Tr. 132-33).

Even if the jury believed that Valenzuela had a disability within the meaning of the ADA and the NYCHRL, and that he had engaged in protected activity, there was a serious factual dispute with respect to whether any such disability or protected activity was a motivating factor in his termination. Seth Alexander, who was not named as a defendant in the action, testified that he alone had the authority to terminate an employee and his termination decisions did not require the approval of any other person. (Tr. 747). He testified that on April 6, he alone made the decision to terminate Valenzuela and then communicated that decision to Devon Weiss in order to start the process. (Tr. 767-68). He also testified at considerable length regarding his

reasons for terminating Valenzuela, stating that "[t]here wasn't just one reason. It was several reasons. You know, one, the no-call/no-show . . . the insubordination and not taking the manager directive, being off the floor without manger approval, using the cell phone without permission, having the cell phone on him, using profanity towards a manager. It's just a pretty long list. We try not to just isolate one particular situation." (Id.). He further testified that Lure Fish Bar had a policy in place for employees to request an accommodation for a disability with which Valenzuela had not complied. (Tr. 749-52, 295-96). The policy provided that after the requesting employee met with Human Resources, specifically Richard Malijan, with documentation of the disability, Malijan would reach out to the management team to ensure that there was a proper accommodation. (Id.).

Valenzuela's credibility was undermined on numerous occasions both on cross-examination and through the testimony of other witnesses. For example, Valenzuela claimed that he had not received an employee handbook and adhered to that claim even after he was confronted with a signed document acknowledging his receipt. (Tr. 281-83, 290-91). He also claimed never to have seen Lure Fish Bar's so-called "golden rules" even though other witnesses testified that they were posted throughout the restaurant. (Tr. 96, 416, 661, 737, 286-287). He additionally denied texting Missy Neill on April 4 from another person's phone after Katy Dean confiscated his phone, despite documentary evidence and testimony to the contrary. (Tr. 78, 211; DX 16). He also denied telling Guardon that he had an issue with abusing Xanax, though Guardon testified to the contrary. (Tr. 132, 222).

The jury had ample credible evidence that the reasons for Valenzuela's termination from Lure Fish Bar were legitimate, non-discriminatory, and non-retaliatory and that those reasons were not a pretext for discrimination or retaliation. Having heard the witnesses,

viewed the documentary evidence, and observed the jury's attentiveness to both the evidence and the Court's instructions on the law, the Court concludes that the jury's verdict in favor of the defendants was not against the greater weight of the credible evidence. There was no miscarriage of justice here.

Plaintiff's Motion for a New Trial (Doc. 48) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 15, 2019